# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

RENE KELLER                                                  CIVIL ACTION

VERSUS

RYAN MICHAEL PEAKE, ET AL                                    NO. 07-892-C-M2

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, March 5, 2008.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RENE KELLER**                                                    **CIVIL ACTION**

**VERSUS**

**RYAN MICHAEL PEAKE, ET AL**                                **NO. 07-892-C-M2**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the Motion to Remand (R. Doc. 5) filed by plaintiff, Rene Keller ("Keller"). The defendants that filed the Notice of Removal in this matter, John Woodhead Nicholas ("Nicholas"), U.S. Jetting Incorporated ("U.S. Jetting"), and Cincinnati Insurance Company ("Cincinnati") (collectively "defendants"), have not filed an opposition to this motion.

## FACTS & PROCEDURAL BACKGROUND

On October 24, 2007, Keller, a Louisiana citizen, filed this action in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana, seeking to recover damages for injuries sustained in an automobile accident that occurred on or about November 2, 2006, in Baton Rouge. In the state court petition, Keller does not specifically identify the injuries she sustained in the accident or the treatment she received and only vaguely describes her injuries as "severe and disabling." In her prayer for relief, she requests damages, including "past physical pain and suffering, future physical pain and suffering, past mental pain and suffering, future mental pain and suffering, property damage, rental expenses, loss of use of vehicle and[/]or depreciation of vehicle, medical expenses, loss of past earnings, loss of future earning capacity, permanent disability of the body, loss of consortium and

1

penalties and attorney's fees, together with legal interest thereon from date of judicial demand, until paid, and for all costs of these proceedings."

On November 26, 2007, Nicholas, U.S. Jetting, and Cincinatti removed Keller's suit to this Court. The removal notice indicates that Nicholas is a "resident" of Georgia, and U.S. Jetting is a "resident of the State of Georgia, with its principal place of business in Alpharetta, Georgia." The removal notice does not provide any information about the citizenship of Cincinatti and simply alleges that it is a "foreign insurance company." The Answer filed by defendants also indicates only that Cincinatti is a "foreign insurance company authorized to do business in the State of Louisiana." Defendants allege, in the notice of removal, that the required amount in controversy for diversity jurisdiction exists in this case "on information and belief;" however, they did not provide any specific information about plaintiff's injuries and alleged damages to support that contention. Keller has now filed the present motion, seeking to have this case remanded to state court because the defendants have failed to prove that complete diversity of citizenship exists among the parties and that the requisite monetary amount is in controversy in this case for purposes of 28 U.S.C. §1332.

## **LAW & ANALYSIS**

### I.   **Defendants' Failure to File an Opposition:**

Local Rule 7.5M of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty (20) days after service of the motion. The rule specifically provides:

LR7.5M          Response and Memorandum

Each respondent opposing a motion shall file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 20 days after service of the motion.  Memoranda shall contain a concise statement of the reasons in opposition to the motion, and a citation of authorities upon which the respondent relies.  For good cause appearing therefor, a respondent may be required to file a response and supporting documents, including memoranda, within such shorter or longer period of time as the court may order, upon written ex parte motion served on all parties.

The present motion to remand was filed on February 6, 2008, and the Court's electronic filing system indicates that defense counsel was electronically served with notice of the filing of the motion on that same date.  More than twenty (20) days have elapsed since the service of the motion, and defendants have failed to file any opposition.  The motion is therefore deemed to be unopposed.  In addition to the motion being unopposed, the Court finds that the motion has merit and should be granted.

## II.   Does diversity jurisdiction exist in this case?

Under 28 U.S.C. § 1332(a), a federal court has diversity jurisdiction if the matter in controversy:  (1) exceeds $75,000.00, exclusive of interest and costs, and (2) is between citizens of different states.  Because plaintiffs in Louisiana state courts, by law, may not specify the numerical value of claimed damages, the removing defendant has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000).  A defendant makes that showing when it is "facially apparent" from a reading of the complaint that the plaintiff's claims are likely to exceed $75.000.00. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

3

If it is not "facially apparent," the court may rely on "summary judgment-type" evidence relevant to the amount in controversy at the time of removal to make the determination.  *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)*; White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003).  All doubts and uncertainties regarding federal jurisdiction must be resolved in favor of remand.  *Sutherland v. First Nationwide Mortgage Corp.*, 2000 WL 1060362 (N.D. Tex 2000).  Under any manner of proof, jurisdictional facts which support removal must be judged at the time of removal, and post-petition affidavits are allowable only if relevant to that period of time.  *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

Looking solely at the allegations in Keller's state court petition, it is ambiguous as to whether her damages will exceed $75,000.00, exclusive of interest and costs.  Keller has not prayed for a state court jury trial so it is not even clear to the Court, based upon her allegations, whether her damages will exceed $50,000.00.[1]  Although Keller vaguely describes her injuries as "severe and disabling," the list of damages in her petition simply provides the usual and customary damages set forth by personal injury plaintiffs and does not provide the Court with any guidance as to the monetary amount of damages Keller has or will incur in this matter.[2] [3]  Furthermore, the fact that Keller did not allege that her

---

[1] *See*, La.C.C.P. art. 1732, which provides that a state trial by jury shall not be available in a suit where the amount of no individual petitioner's cause of action exceeds $50,000.00, exclusive of interest and costs.

[2] Although Keller also alleges property damage, rental expenses, and loss of earnings and earning capacity in her petition, she provides absolutely no description of the nature and extent of those damages.  Moreover, since she is the only named plaintiff in this matter, the Court is perplexed as to why a loss of consortium claim has been asserted, possibly because plaintiff's counsel simply included in the petition the generic list of damages that he uses in personal injury cases and did not tailor that list to

potential damages are less than the jurisdictional minimum in accordance with La.C.C.P. art. 893(A)(1) does not make it "facially apparent" that her claims are likely to exceed the jurisdictional minimum.[4]  *See, Weber v. Stevenson*, 2007 WL 4441261 (M.D.La. 2007)(A plaintiffs' failure to follow La.C.C.P. art. 893(A)(1)'s mandate, while entitled to some consideration, in and of itself is not determinative of the amount in controversy).

Given that it is not "facially apparent" from Keller's petition whether her damages will exceed the jurisdictional minimum, the Court must next consider whether defendants have met their burden of proving, through summary judgment-type evidence, that the amount in controversy in this matter is likely to exceed the jurisdictional minimum.  As noted above, the defendants have not filed an opposition to this motion, and they did not submit any competent evidence satisfying that burden with their notice of removal – instead, they only

---

Keller's particular suit.  That likely being the case (as often occurs when form petitions are used in personal injury cases), the face of Keller's petition provides the Court with very little guidance as to the actual nature and extent of Keller's damages.

[3] *See, Saxon v. Thomas*, 2007 WL 1115239, at *2-3 (W.D.La. 2007)("If the scant facts set forth in the petition, combined with a prayer for relief for certain categories of damages (prayed for in almost every personal injury case of any magnitude) were deemed adequate to allow federal diversity jurisdiction, there would be very few slip and fall, car accident or other personal injury cases that would not meet the amount in controversy requirement.  Congress's imposition of a $75,000.00 threshold for removal of such cases would be eviscerated.  *See Guillory v. Chevron Stations, Inc.*, 2004 WL 1661201 (E.D.La. 2004)(distinguishing *Gebbia* and remanding knee injury case despite claims for several categories of damages).

[4] La.C.C.P. art. 893(A)(1) provides, in pertinent part, that no specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand in state court, and the prayer for relief shall be for such damages as are reasonable in the premises except that, if a specific amount of damages is necessary to establish the lack of jurisdiction of federal courts due to insufficiency of damages, a general allegation that the claim exceeds or is less than the requisite amount is required.

generally alleged "upon information and belief" that the jurisdictional minimum is satisfied based upon plaintiff's vague description of her injuries and damages in the petition.

Furthermore, although not required to do so, Keller has submitted with her present motion various medical records documenting her medical treatment following the accident in question which indicate that she sustained only soft tissue injuries (sprain/strain in the cervical, thoracic, and lumbar regions; right shoulder trauma; and headaches) that resolved after six (6) months of therapy and which reflect that her medical special damages total only $5,157.75.[5]   Keller has also cited to specific Louisiana cases wherein plaintiffs

---

[5] According to Keller's medical records, she was seen in the emergency room at West Jefferson Medical Center a day after the accident at issue, on November 3, 2006, at which time she underwent various x-rays, and no broken bones or fractures were identified.  Her total charges for that ER visit were $1,273.00.  She then saw a chiropractor in Houston (where she lived following Hurricane Katrina), Art Keller, D.C., beginning on November 7, 2006.  Dr. Keller diagnosed her with a cervical, thoracic, and lumbar myofascial sprain/strain, right shoulder trauma, and post-traumatic cephalgia. Plaintiff was started on conservative therapy, including a course of hydrocollator, manipulation, electrical muscle stimulation, and cryotherapy.  Her recovery was slow but steady, and her range of motion improved over the course of her treatment with Dr. Keller.  Plaintiff saw Dr. Keller for approximately nineteen (19) therapy visits over six (6) weeks, with her last visit occurring on December 21, 2006.  Her medical bills with Dr. Keller totaled $1,895.00.

Plaintiff then saw Dr. F. Allen Johnston, an orthopedic surgeon, beginning on January 17, 2007.  He diagnosed her with a cervical and lumbar strain and recommended that she take Celebrex, use a Tens unit at home, engage in physical therapy for AIM/ROM/strengthening exercises, and that an MRI of the cervical and lumbar spines be performed in six (6) weeks if no improvement occurred with six weeks of treatment.  When the plaintiff returned to see Dr. Johnston on May 9, 2007, she reported that her symptoms had resolved and that she was ready for release.  Dr. Johnston noted at that time that plaintiff had no remarkable physical findings.  He diagnosed her with a resolved neck and back strain and discharged her to return back as needed.  Plaintiff's total medical bills with Dr. Johnston were $526.00.  Finally, plaintiff's physical therapy with Dr. Norman Ott at Metropolitan Health Group occurred over an approximate eight (8) week period from January 19, 2007 to March 21, 2007, for which she incurred $1,463.75 in medical bills.  Thus, her medical care relative to the accident in question involved approximately six (6) months of conservative treatment

sustained soft tissue injuries similar to the injuries she sustained and were awarded general damages in the range of $1,000.00 to $2,000.00 per month of treatment in addition to their medical special damages.  *See, Burrell v. Williams*, 2005-1625 (La. App. 1 Cir. 6/9/06), 938 So.2d 694 (where an award of $10,000.00 in general damages was affirmed for approximately five months of treatment for a cervical strain, a low back strain, and a contusion to the ribs sustained by a plaintiff during an automobile accident); *Teasley v. Ates*, 2003-824 (La. App. 3 Cir. 12/10/03), 861 So.2d 778 (affirming an award of $5,000.00 in general damages to a motorist who suffered trauma to her left shoulder and cervical strain syndrome, which was treated with medication and physical therapy and resolved around two months following the accident);  *Andrus v. Sanchez*, 04-1063 (La. App. 5 Cir. 2/15/05), 898 So.2d 512 (awarding general damages of $3,000.00 and chiropractic expenses for injuries suffered to the neck, left shoulder, and left jaw, which resulted in two months of treatment); *Perry v. Anderson*, 1999-0230 (La. App. 4 Cir. 1/12/00), 751 So.2d 374 (General damages of $5,000.00 affirmed where the plaintiff complained of pain in the neck and lower back and swelling and limited motion in the shoulder and underwent approximately eight months of treatment).[6]

---

between November 3, 2006 and May 19, 2007, resulting in $5,157.75 in medical bills.

[6] *See also, Marie v. John Deere Ins. Co.*, 96-1288 (La. App. 1 Cir. 3/27/97), 691 So.2d 1327 (Cervical and lumbar strain as a result of a car accident; approximately 10 months of treatment; $8,500.00 awarded); *Perkins v. Allstate Indemnity Insurance Co.*, 36,044 (La. App. 2 Cir. 6/12/02), 821 So.2d 647)(Woman involved in auto accident claimed she had headaches, back pain, and development of TMJ dysfunction afterwards; two months and one week of treatment; $6,000.00 awarded); *Hayes v. Maxey*, 35,294 (La. App. 2 Cir. 12/28/01), 803 So.2d 466 (Plaintiff treated by same chiropractor for three and one-half months for her shoulder and back; awarded $4,500.00 in general damages); *McCullin v. U.S. Agencies Cas. Ins. Co.*, 34, 661 (La. App. 2 cir. 5/9/01), 786 So.2d 269 (Two months of active treatment by chiropractor and orthopedist for soreness and tightness in shoulder, upper back and neck; Soft tissue

Considering the above jurisprudence and the fact that Keller's condition resolved after six months of treatment without an MRI or surgical treatment being performed, the Court agrees with Keller that there does not appear to be a plausible claim that the amount in controversy in this case exceeds $75,000.00, exclusive of interest and costs.[7] Accordingly, that required element of diversity jurisdiction is lacking in this matter, and Keller's motion to remand should be granted.

Finally, and in the alternative, Keller's motion to remand should be granted because

―――――――――――

injuries almost fully resolved three months post-accident; $7,000.00 awarded); *George v. Allstate Ins. Co.*, 32, 899 (La. App. 2 Cir. 4/5/00), 758 So.2d 373)(Cervical and lumbar strain; Conservative treatment for five weeks; $2,000.00 awarded); *Orea v. Scallan*, 32, 622 (La. App. 2 Cir. 1/26/00), 750 So.2d 483 (Six weeks of treatment for soft tissue injuries with complaints of pain through time of trial; $2,500.00 awarded); *Minkler v. Chumley*, 32,558 (La. App. 2 Cir. 12/8/99), 747 So.2d 720 (Soft tissue neck injury; Physical therapy for eight months with residual pain at trial; $8,000.00 in general damages awarded); *Jimmerson v. Rearden*, 98-1120 (La. App. 3 Cir. 3/3/99)(Chiropractic treatment for soft tissue injuries as a result of an auto accident for six months post-accident with recurrent symptoms; $7,500.00 awarded); *Bernard v. City of Lafayette*, 98-1815 (La. App. 3 Cir. 5/5/99), 735 So.2d 804 (Five months of cervical and lumbar pain with complaints at trial; $5,000.00 awarded); *Mosley v. Methodist Health Sys. Foundation*, 99-3116 (La. App. 4 Cir. 11/15/00), 776 So.2d 21 (Eight month soft tissue injury, and $7,000.00 awarded); *Barrociere v. Batiste*, 99-1800 (La. App. 4 Cir. 2/2/00), 752 So.2d 324 (Four months of treatment for neck and back soft tissue injuries after auto accident; $4,500.00 awarded); *Perry v. Anderson*, 99-0230 (La. App. 4 Cir. 1/12/00), 751 So.2d 374 (Eight months active treatment for injuries to neck, back and shoulder due to car accident; Residual pain for additional three months; $5,000.00 awarded); *Moreau v. North American Fire and Cas.*, 01-976 (La. App. 5 Cir. 12/26/01), 806 So.2d 809(Nine month soft tissue injury including headaches; Award of $10,000.00); *Burse v. Allstate Ins. Co.*, 00-1895 (La. App. 5 Cir. 3/28/01), 783 So.2d 548 (One month active treatment; Residual neck pain at trial; $2,500.00 awarded); *Scott v. Byrd*, 00-308 (La. App. 5 Cir. 8/29/00), 768 So.2d 214 (Four to five months active chiropractic treatment for soft tissue injuries due to car accident; Intermittent lumbar pain at trial; $4,000.00 awarded).

[7] *See, Saxon*, at *4 (where the court found that the jurisdictional minimum was not satisfied in a case involving neck and back pain that quickly resolved, a bare diagnosis of a torn meniscus with almost no treatment, a plaintiff who refused surgery for the knee injury, less than $5,000.00 in total medical and therapy expenses, and no evidence of continuing pain of any significant degree).

defendants have failed to affirmatively allege the citizenship of all of the defendants to establish complete diversity of citizenship among the parties.  The burden of establishing federal jurisdiction rests on the party seeking the federal forum, and for diversity jurisdiction, the party asserting federal jurisdiction must "distinctly and affirmatively allege [ ]" the citizenship (or domicile) of all of the parties, not merely their place of residence, regardless of whether such parties are served or unserved.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001); *Jagiella v.* Jagiella, 647 F.3d 561 (5th Cir. 1981); New *York Life Ins. v. Deshotel*, 142 F.3d 873 (5th Cir. 1998)(Defendant's non-diverse citizenship could not be ignored in determining whether diversity jurisdiction existed simply because he was unserved).

In the notice of removal in the present case, the defendants failed to affirmatively allege the citizenship of U.S. Jetting, which appears to be a corporation, in accordance with 28 U.S.C. §1332(c)(1) because they failed to identify the state of incorporation for that entity.[8]  As to Cincinatti, the defendants provided no information in their notice of removal regarding that company's organizational structure or its citizenship and merely identified it as a "foreign insurance company," which is insufficient for purposes of §1332.  Regarding Nicholas, they merely identified him as a "resident" of Georgia, without setting forth his state of citizenship.  Finally, even though defendant, Ryan Michael Peake ("Peake"), was

---

[8]Section 1332(c)(1) provides that a corporation shall be deemed the citizen of any State "by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. §1332.  Defendants' allegation that U.S. Jetting is a "resident" of Georgia and has its "principal place of business in Alpharetta, Georgia," is insufficient because it does not indicate where U.S. Jetting was incorporated.  Keller also points out that the defendants have failed to file a corporate disclosure statement in this case, which likely would have provided the information concerning citizenship that is lacking in their notice of removal.

not served at the time the notice of removal was filed, his citizenship nevertheless should have been affirmatively alleged by the defendants.  Moreover, Peake was recently served, and his counsel, who is the same counsel as for the other defendants in this matter, merely alleged that Peake is a "resident" of Georgia in the Answer filed on Peake's behalf.  Thus, the defendants have not sufficiently alleged any of their citizenships as being completely diverse from the plaintiff, and as a result, they have not carried their burden of proving the second element of diversity jurisdiction.  Keller's motion should therefore be granted on that ground as well.

## RECOMMENDATION

For the above reasons, the Motion to Remand (R. Doc. 5) filed by plaintiff, Rene Keller, should be **GRANTED**, and this matter should be **REMANDED** to the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana, for further proceedings.

Signed in chambers in Baton Rouge, Louisiana, March 5, 2008.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

10